**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEREMY L. RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KEAY & COSTELLO, P.C., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1.      Plaintiff Jeremy L. Ramirez brings this action to secure redress against unlawful collection practices engaged in by defendant Keay & Costello, P.C.  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 15 U.S.C. §1692k (FDCPA).

3.      Venue in this District is proper because defendant's collection communications were sent from and received in this District and all parties are located in this District.

## PARTIES

4.      Plaintiff is an individual who resides in a home which he owns in Sugar Grove, Illinois.

5.      Plaintiff's home and a large number of others are subject to a declaration creating the Windsor West Community Association.

6.      Defendant Keay & Costello, P.C. is a law firm organized as an Illinois professional corporation with offices at 128 S. County Farm Road, Wheaton, IL 60187.

7.      Defendant Keay & Costello, P.C., regularly attempts to collect amounts

1

allegedly owed by homeowners to condominium and community associations, including the Windsor West Community Association.

8.      Any such debt relating to property purchased for use as a residence by the purchaser or a member of the purchaser's family is one for personal, family or household purposes.

9.      Defendant Keay & Costello, P.C. also regularly attempts to collect other consumer debts, such as medical debts.

10.      Defendant Keay & Costello, P.C. uses the mails and telephone system to collect consumer  debts.

11.      Defendant Keay & Costello, P.C. is a debt collector within the FDCPA.

## FACTS

12.      On or about May 9, 2012, Keay & Costello, P.C., sent plaintiff the letter attached as Exhibit A, seeking to collect an assessment on plaintiff's residence.

13.      On or about May 15, 2012, plaintiff paid $260, representing the assessment and a $50 late fee.

14.      On or about June 29, 2012, Keay & Costello, P.C., sent plaintiff the letter attached as Exhibit B.

15.      The only amounts claimed in Exhibit B are Keay & Costello, P.C.'s claimed attorney's fees of $160.75.

16.      There was no legal basis for Keay & Costello, P.C. to claim attorney's fees from plaintiff.

17.      A copy of the declaration creating the Windsor West Community Association is attached as Exhibit C.

18.      Exhibit C  is a standard form created by the developer of Windsor West.

19.      Exhibit C authorizes (§ 6.08) attorney's fees in connection with a lawsuit for unpaid assessments or to foreclose a lien for such assessments.

2

20.     No other attorney's fees are authorized.

21.     Community associations are governed by the Illinois Common Interest Community Association Act, 765 ILCS 160/1-1 et seq.

22.     Nothing in the statute authorizes attorney's fees beyond those provided for in a declaration.

23.     Keay & Costello, P.C. nevertheless demands payment of attorney's fees on behalf of community associations whose governing declarations do not authorize demands for attorney's fees unless a suit is filed.

24.     Plaintiff paid the attorney's fees in order to avoid the greater cost of defending a lawsuit for the attorney's fees.

## COUNT I – FDCPA

25.     Plaintiff incorporates paragraphs 1-24.

26.     Defendant Keay & Costello, P.C. violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by demanding amounts not owed.

WHEREFORE, plaintiff requests judgment in his favor and against defendant for:

(1)     Actual damages;

(2)     Statutory damages;

(3)     Attorney's fees, litigation expenses and costs of suit;

(4)     Such other or further relief as is appropriate.


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

3

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\27076\Pleading\Complaint_Pleading.WPD

4

# EXHIBIT A

# KEAY & COSTELLO, P.C.

DAVID H. KEAY
PATRICK T. COSTELLO
DOUGLAS J. SURY
KEITH R. JONES
JAMES A. WEBB
NICOLAS R. NELSON

128 S. COUNTY FARM ROAD
WHEATON, ILLINOIS 60187
TELE: (630) 690-6446
FAX: (630) 690-5454
www.keaycostello.com

PARALEGAL
MICHELLE L. SCALES

REAL ESTATE ASSISTANT
LISA A. CARBY

May 9, 2012

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Jeremy Ramirez

*Redacted*

Re:     **Windsor West Community Association**
        **Past Due Assessments/Late Fees**
        **THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION**
        **OBTAINED CAN BE USED FOR THAT PURPOSE.**

Dear Mr. Ramirez:

This Law Firm has been retained by a representative of the Windsor West Community Association to collect a debt and to advise you of your delinquent account for unpaid assessments and other fees through February 16, 2012 in the amount of $260.00 for the property located at Enclosed is an "Account Statement" which reflects the delinquent amounts and the time period for this delinquency. In addition, the amount of $155.00 in attorney's fees and $5.75 in certified mailing costs have been incurred in attempting to collect this debt. **Accordingly, the total amount due and owing Windsor West Community Association is $420.75.**

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, this office will assume that it's valid. If you do dispute it by notifying this office in writing to that effect this office will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, this office will furnish you with that information as well.

Please consider this notice as the demand required pursuant to 735 ILCS 5/9-104.1 of the Illinois Forcible Entry and Detainer Act. If the entire balance of $420.75 is not paid within thirty (30) days from the date of receipt of this letter, the Association is authorized by statute to file suit. If, however, you request proof of the debt or the name and address of original creditor, if different from the current creditor, within the thirty (30) day period that begins with your **receipt** of this letter, the law requires this office to suspend its efforts (through litigation or otherwise) to collect the debt until this office mails the requested information to you.

Jeremy Ramirez
May 9, 2012
Page Two

"Only **FULL PAYMENT** of all amounts demanded in this notice will invalidate the demand, unless the person claiming possession, or his or her agent or attorney, agrees in writing to withdraw the demand in exchange for receiving partial payment."

Please feel free to contact our office at (630) 690-6446 with any questions regarding this Notice. All payments should be made payable to Windsor West Community Association and sent to Keay & Costello, P.C., 128 S. County Farm Road, Wheaton, Illinois 60187.

Sincerely,

James A. Webb
**KEAY & COSTELLO, P.C.**

JAW:klm

Enclosure, as stated

One copy regular mail

cc:      Foster Premier

## COLLECTION NOTICE

**Our law firm has been retained to attempt to collect a debt on behalf of the client listed above. Any information that we obtain will be used for that purpose. The amount of the debt is set forth above, and it is owed to our client who is also listed above. Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, this office will assume that it's valid. If you do dispute it-by notifying this office in writing to that effect- this office will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, this office will furnish you with that information as well. If you request proof of the debt or the name and address of original creditor, if different from the current creditor, within the thirty (30) day period that begins with your receipt of this letter, the law requires this office to suspend its efforts (through litigation or otherwise) to collect the debt until this office mails the requested information to you.**

# EXHIBIT B

# KEAY & COSTELLO, P.C.

DAVID H. KEAY
PATRICK T. COSTELLO
DOUGLAS J. SURY
KEITH R. JONES
JAMES A. WEBB
NICOLAS R. NELSON
BENJAMIN J. ROONEY

128 S. COUNTY FARM ROAD
WHEATON, ILLINOIS 60187
TELE: (630) 690-6446
FAX: (630) 690-5454
www.keaycostello.com

PARALEGAL
MICHELLE L. SCALES

REAL ESTATE ASSISTANT
LISA A. CARBY

June 29, 2012

Jeremy Ramirez
██████████████
██████████████

Redacted

RE:    **Windsor West Community Association**

Dear Mr. Ramirez:

As you know our office forwarded a 30-day demand letter to you on May 9, 2012 requesting payment on your account in the amount of $420.75. To date, the Association has only received your partial payment in the amount of $260.00.  Your balance on the original demand of May 9, 2012 is **$160.75**.

The Association has advised our office that if full payment is not received by July 13, 2012 we should proceed accordingly.

Should you have any questions please do not hesitate to contact our office.

Sincerely,

James A. Webb
**KEAY & COSTELLO, P.C.**

JAW:lac

COLLECTION NOTICE

THIS LAW FIRM HAS BEEN RETAINED TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Page: 1

**WINDSOR WEST COMMUNITY ASSN**
P.O. BOX 66169
CHICAGO IL  60666-0169
630-653-7782

*Redacted*

### Statement of Account - 06/28/12

| | |
|---|---|
| Re: ▮▮▮▮▮▮▮▮▮ | Account # : ▮▮▮▮ |
| **JEREMY RAMIREZ** | Lot # : N/A |
| ▮▮▮▮▮▮▮▮▮▮ | Bill Period: |
| | Payment Due:  06/28/12 |
| | **Amount Due:    160.75** |

| Date | Description | Charges | Credits | Balance |
|---|---|---|---|---|
| 01/31/12 | Balance Forward | | | 0.00 |
| 02/01/12 | ASSESSMENT | 210.00 | | 210.00 |
| 02/16/12 | Late Fees | 50.00 | | 260.00 |
| 02/27/12 | LN sent. cp | | | |
| 04/06/12 | FN sent. dn | | | |
| 05/04/12 | Send to K&C for collections. dn | | | |
| 05/15/12 | Payment Rec'd  1845 | | 260.00 | 0.00 |
| 06/11/12 | Attorney Fees | 160.75 | | 160.75 |
| 06/11/12 | KC-Inv215198-Owr/BKSrch/Rvw Balance 5/9/12.rf | | | |
| | **New Balance  -   Please Pay This Amount** | | | 160.75 |

Make Checks Payable to: **Windsor West Community Assn.**

This document is an attempt to collect a
debt.  Any information obtained will be used
for that purpose.
Payments have been applied through 6/28/12.

EXHIBIT C

Redacted



## AMENDED AND RESTATED
## DECLARATION OF EASEMENTS, COVENANTS, CONDITIONS AND
## RESTRICTIONS FOR THE
## WINDSOR WEST COMMUNITY ASSOCIATION

### WINDSOR WEST COMMUNITY ASSOCIATION
### VILLAGE OF SUGAR GROVE
### KANE COUNTY, ILLINOIS

Redacted

### AMENDED AND RESTATED
### DECLARATION OF EASEMENTS, COVENANTS, CONDITIONS
### AND RESTRICTIONS FOR WINDSOR WEST COMMUNITY ASSOCIATION

This Amended and Restated Declaration of Easements, Covenants, Conditions and Restrictions for the Windsor West Community Association is made this 19th day of February, 2004, by WISEMAN-HUGHES ENTERPRISES, INC., an Illinois Corporation, (hereinafter referred to as "Developer or Declarant").

### WITNESSETH:

WHEREAS, the Declarant is or was the owner of the real property commonly known as Windsor West Unit 1 and Windsor West Unit 2 and legally described in Exhibit A to the Declaration, recorded in DuPage County on October 29, 2003 as Document No. 2003K192458 and which legal descriptions are incorporated herein by reference, (hereinafter referred to as "Development Area"); and

WHEREAS, the Declarant in ARTICLE EIGHT, Section 3 reserved the right to amend, modify or delete any Section or portion thereof of this Declaration at any time prior to the conveyance of the last Lot or Unit within the Property of the Declaration of Easements, Covenants, Conditions and Restrictions for the Windsor West Community Association to: (i) comply with applicable statutes, regulations, and guidelines of governmental agencies and other public, quasi-public, or private entities which perform functions similar to governmental agencies; (ii) induce any such agencies or entities to make, purchase, sell, insure, or guarantee first mortgages covering units; (iii) comply with the Illinois Condominium Act; and (iv) correct clerical or typographical errors; and

WHEREAS, the Developer, Declarant, and Board of Directors of the Windsor West Condominium Association have determined that the aforesaid Declaration of Easements, Covenants, Conditions and Restrictions for the Windsor West Community Association needs to be amended and restated so as to insure the high quality and character of the Windsor West Community and to comply with applicable statutes, regulations, and guidelines of governmental agencies and other public, quasi-public, or private entities which perform functions similar to governmental agencies by amending and restating the Declaration of Easements, Covenants, Conditions and Restrictions for the Windsor West Community Association for Windsor West; and

WHEREAS, it has been determined that the most efficient manner of amending said Declaration is to restate the entire Declaration; and

Redacted

WHEREAS, this Amended and Restated Declaration of Easements, Covenants, Conditions and Restrictions for the Windsor West Community Association supersedes and replaces the aforesaid Declaration; and

NOW THEREFORE, WISEMAN-HUGHES ENTERPRISES, INC. declares that the Declaration of Easements, Covenants, Conditions and Restrictions for the Windsor West Community Association shall be amended and restated as hereinafter set forth.

## ARTICLE I
## GENERAL PURPOSES OF THIS DECLARATION

The Property is subjected to the Covenants hereby declared to insure proper use, administration and maintenance of certain open areas, stormwater retention or detention areas and any structures appurtenant thereto, entry monuments, landscaped easements, and such other Common Areas described in Exhibit B or otherwise designated by the Board of Directors for the benefit of the Property and each owner thereof; and to promulgate such rules and regulations and use restrictions as the Members and Board deem appropriate so as to assure the harmonious inter-relationship of the Owners and to protect the respective values of the Property and each such Lot or Unit.

## ARTICLE II
## DEFINITIONS

The following words and terms when used in this Declaration will be defined as follows:

2.01   ASSOCIATION: WINDSOR WEST COMMUNITY ASSOCIATION, an Illinois not-for-profit corporation, its successors and assigns.

2.02   PROPERTY: Shall mean and refer to the real estate described on Exhibits A and B, attached hereto and by this reference made a part hereof, which is subject to the provisions of this Declaration and such additions thereto as may hereinafter be brought within the jurisdiction of the Association and/or Declarant as provided herein or by operation of statute.

2.03   COMMON AREA: Property described in Exhibit B (as amended from time to time) consisting of open areas and any improvements thereon, stormwater retention or detention areas and any structures appurtenant thereto, median islands, entry monuments, landscaped easements and any other area designated by Declarant as Common Area for the common use and enjoyment of the owners.

2.04   COMMON EXPENSES: The expenses of administration (including management and professional services), maintenance, operation, repair, replacement, and landscaping of the Common Area; the costs of additions, alterations, or improvements to the Common Area, the cost of insurance required or permitted to be obtained by the Board under Article V; utility expenses for the Common Area, if any; any expenses designated as common expenses by this Declaration or the By-Laws, and any expenses that the Board of Directors of the Association

Redacted

shall determine to be necessary or desirable to meet the primary purpose of the Association.

2.05   DECLARANT:   WISEMAN-HUGHES ENTERPRISES, INC., an Illinois corporation, and its successors and assigns, whether such succession or assignment applies to all or any part of the Property.

2.06   LOT:  That portion of the Property shown on recorded subdivision or resubdivision plat or plats of the Property, improved or intended to be improved with one or more dwellings as herein described.

2.07   DWELLING UNIT:  A part of the Condominium Property, including one or more rooms, designed or intended for independent residential use and having lawful access to a public way.  Each Dwelling Unit shall consist of the space enclosed and bounded by the planes constituting the boundaries of such Dwelling Unit as shown on the Plat and the fixtures and improvements located wholly within such boundaries which serve such Dwelling Unit exclusively.  A Dwelling Unit shall not include the following, wherever located:

(a)  any structural components of the Condominium Property; or

(b)  any component of a system which serves more than one Dwelling Unit where such component is an integral part of such system and is not intended to serve the Dwelling Unit exclusively.  Each Dwelling Unit is identified on the Plat by a distinguishing number or other symbol.  The legal description of each Dwelling Unit shall refer to such identifying number or symbol and every such description shall be deemed good and sufficient for all purposes, as provided in the Act.

2.08   DWELLING:  Single family detached or attached home or condominium Unit as defined in the Village of Sugar Grove Zoning Regulations and Ordinances for the Windsor West Subdivision and the Declaration of Condominium for the Windsor West Townhome Association.

2.09   MEMBER OR MEMBERSHIP:  Shall mean and refer to any person or entity who is the owner of the property described in Exhibit A pursuant to the terms of Article 4.03 of this Declaration.

2.10   OWNER:  The record holder of fee simple title to any Lot or Dwelling Unit on the Property, whether such Owner shall be one or more persons or entities, the beneficiary or beneficiaries of a trust, shareholder of a corporation, or a partner of a partnership, but excluding those persons or entities having any interest merely as security for the performance of an obligation.

2.11   BOARD OF DIRECTORS:  The Board of Directors or any Individual member of said Board of the Windsor West Community Association.

2.12   TURNOVER DATE:  The date on which any one of the following shall first occur:

Redacted

(a)  Thirty days after Declarant has conveyed all the lots in Windsor West to purchasers for value;

(b)  The expiration of seven (7) years from the date of the recording of this Declaration or any Amendment thereto;

(c)  The date designated in written notice from the Declarant to all of the Owners as being the Turnover Date which may be earlier than the date specified in a or b above.

**2.13  VILLAGE OF SUGAR GROVE:**  The Village of Sugar Grove, an Illinois Municipal Corporation, or any other political entity which may from time to time be empowered to perform the functions or exercise the powers vested in the Village of Sugar Grove as of the date of the recording of this Declaration.

**2.14  VOTING MEMBER:**  The individual who shall be entitled to vote in person or by proxy at meetings of the Owners, as more fully set forth in Article IV.

**2.15  PUBLIC AREA/PARK DISTRICT:**  The property described in Exhibit B shall upon demand by the Village of Sugar Grove be conveyed by Declarant or its successor's hereunder to the Village of Sugar Grove Park District pursuant to the provisions set forth in the enabling Ordinances and Annexation and amended Agreements for Windsor West to be used and maintained by them as they see fit for their intended purposes as storm water detention areas and public open space and which property is not subject to the provisions of this Declaration. Such use and maintenance may include but is not limited to the periodic controlled burning of prairie grasses and weeds.

**2.16  ACTIVE PARKS:**  Areas of land planned for physical recreational activities such as playgrounds, ball fields, horseshoes. These parks provide an environment to facilitate proactive, internal influences.

**2.17  BUFFER:**  An area of land that serves to separate two diverse uses of property.

**2.18  CONSERVATION EASEMENT:**  An area of land that has been dedicated to be preserved in its current, natural state or improved state.

**2.19  DETENTION:**  Dry-bottom area used for storm water management.

**2.20  MULTIPURPOSE PARKS:**  Recreational areas used for more than one recreational activity.

**2.21  NATIVE PLANTINGS:**  Landscape plantings indigenous to the area.

Redacted

**2.22   NATIVE RESTORATION:**  Indigenous species planted to bring back the original landscape of the area.

**2.23   GREENBELT:**  Expanses and corridors of open space connecting neighboring communities.

**2.24   GREENWAY:**  Areas of land that allow for uninterrupted and safe movement between parks, emphasizing harmony with the natural environment.

**2.25   NATURAL AMENITIES:**  An attribute of the physical environment that enhances a location as a place of residence.

**2.26   PARK & OPEN SPACE MASTER PLAN:**  The overall concept for the improvement of all the park and open space areas in a community to provide continuity and integration with the community's parks system.

**2.27   PARK PLAN:**  A plan for a specific, individual park that addresses the needs of the community and contributes to and compliments the overall Parks & Open Space Master Plan.

**2.28   PASSIVE PARKS:**  Areas of land planned for contemplative or leisure recreational activities such as butterfly watching or bird watching.  These parks provide an environment of external influences to be acted upon or observed.

**2.29   PATHWAY SYSTEM:**  The network of asphalt paths dedicated for a specific purpose such as pedestrian use, bicycling, and other non-motorized activities.

**2.30   PERMANENT CONSTRUCTION EASEMENT:**  An area of land that is set aside for use during construction of utilities.  The easement remains in place even after the immediate construction activity ceases.

**2.31   PUBLIC AREAS:**  Land set aside for access and use by the general population.

**2.32   PUBLIC  FACILITIES MAINTENANCE EASEMEnt:**  An area of land that is set aside for maintenance of facilities owned or used by the general public.

**2.33   RETENTION:**  Wet-bottom area used for storm water management.

Redacted

2.34    TREE PRESERVATION PLAN:  A plan that identifies which existing trees on-site will be kept safe from injury, harm, or destruction and which will be removed.  The plan also gives details on how the trees should be protected during the development process.

## ARTICLE III
## PROPERTY SUBJECT TO THIS DECLARATION

3.01 EXISTING PROPERTY:  The Property which is and shall be held, occupied, sold and conveyed subject to this Declaration is located in the Village of Sugar Grove, Kane County, Illinois, and is more particularly described in Exhibit A attached hereto.  Declarant intends to develop the Property into Residential subdivisions known as Windsor West, Units 1 and Windsor West Unit 2 (sometimes hereinafter collectively referred to as "Windsor West").

3.02    ANNEXATION BY OWNERS:    Additional property may be annexed to this Declaration but such annexation shall require the assent of two-thirds (2/3rds) of the Members of the Association.  Any Property so annexed must be subject to the Declaration of Covenants, Conditions and Restrictions compatible with those established for the Property. Notwithstanding the foregoing, any such Declaration need not conform exactly to the terms of this Declaration but may contain such additions, deletions or modifications as are compatible with the terms of this Declaration as determined by the Board.

3.03  ANNEXATION BY DECLARANT:  The Declarant hereby reserves to itself and its successors and assigns the right to annex additional property to this Declaration, without the assent of the other Members of the Association.  Any Property so annexed must be subject to the Declaration of Covenants, Conditions and Restrictions compatible with those established for the Property.  Notwithstanding the foregoing, any such Declaration need not conform exactly to the terms of this Declaration but may contain such additions, deletions or modifications as are compatible with the terms of this Declaration as determined by the Declarant.

## ARTICLE IV
## THE ASSOCIATION

4.01  THE ASSOCIATION:  Declarant shall cause the Association to be incorporated as a not-for-profit corporation.  The Association  shall be the governing body for all of the Owners and for the administration and operation of the Property as provided in this Declaration and the By-Laws. All agreements and determinations  lawfully made by the Association shall be deemed to be binding on all Owners and their respective successors and assigns.

4.02  POWERS, DUTIES AND RESPONSIBILITIES: The Association is created to carry out the purpose of this Declaration of Easements, Covenants, Conditions and Restrictions.  In order to carry out that purpose, the Association shall be the governing body for all of the owners and beneficiaries of title-holding land trusts of Lots and Units in Windsor West.  Its powers, duties and responsibilities shall include but are not limited to the following:

Redacted

(a) To provide for the highest standards of maintenance and upkeep of the property, common area and screen planting easements and to establish and promote the desired quality and character of Windsor West;

(b) To receive property of every kind, whether real or personal, and to administer and apply such property and the income therefrom exclusively for the benefit and purposes of the Association.

(c) To receive any gift, bequest, or devise of any property for any purpose specified by the donor or testator or for any of the purposes of the Association;

(d) To provide for the insurance maintenance, repair or replacement of any of the following in Windsor West:

     i.     All entrance monuments and gates and any accompanying landscaping, vegetation, grass and fencing;

     ii.     All vegetation planted by the Declarant or Association, within the landscape easements and common areas;

     iii.     Any fences located within landscape easements and common areas which were installed by the Declarant or the Association;

     iv.     Any property owned or leased by the Association;

(e) To provide for a general fund to enable the Association to exercise its powers, duties, and responsibilities as delineated in the Articles of Incorporation, this Declaration and its By-Laws by levying an annual assessment and or special assessment;

(f) To enforce any lien for non-payment of any assessment;

(g) To take any action necessary to effectuate the purposes of this Declaration.

## 4.03 MEMBERSHIP:

(a) From and after the Turnover Date, there shall be only one class of membership in the Association. The Owner of each Lot or Units shall be a member of the Association. There shall be one membership per Lot or Unit ownership. Membership shall be appurtenant to and may not be separated from ownership of a Lot or Unit. Ownership of a Lot or Unit shall be the sole qualification for membership. The Association shall be given written notice of the change of ownership of a Lot or Unit within ten (10) days after such change.

(b) One individual shall be designated as the "Voting Member" for each Lot or Unit. The Voting Member or his proxy shall be the individual who shall be entitled to vote at meetings of the Owners. If the record Ownership of a Lot or Unit shall be in more than one person, or if an Owner is a trustee, corporation, partnership or other legal entity, then the

Redacted

Voting Member for the Lot or Unit shall be designated by such Owner or Owners in writing to the Board and if in the case of multiple individual Owners no designation is given, then the Board at its election may recognize an individual Owner of the Lot or Unit as the Voting Member for such Lot or Unit.

**4.04  THE BOARD:**  From and after the Turnover Date, the Board  shall consist of three (3) individuals, each of whom shall be an Owner or a Voting Member, or both.  Members of the Board of Directors shall be elected at each annual meeting of the Owners as provided in the By-Laws.   At all times there will be two Directors from Windsor West Unit 1 and one Director from Windsor West Villas Unit 2 after annexation to this Declaration as amended.

**4.05  CLASSES OF VOTING:**  The Association shall have two classes of voting Membership.

Class A.  Class A Members shall be those Owners as defined in Article 4.03, other than the Declarant, except as Declarant may qualify for Class A Membership as provided herein. Class A Members shall be entitled to one vote for each Lot or Unit in which they hold the interest required for Membership under Article 4.03.  When the Ownership of any one Lot or Unit is held by more than one person or entity, all such persons or entities shall be Members and the vote for such Lot or Unit shall be exercised among them, but in no case shall there be allowed more than one vote for any one Lot or Unit.

Class B.  Class B Membership shall be held by the Declarant.   The Class B Member or Members shall be entitled to four votes for each Lot or unit in which it holds the interest required for Membership under Article 4.03, provided that Class B Membership shall cease and be converted to Class A Membership upon the happening of the first of the following events:

    1.  When the total votes outstanding in Class A Memberships equal the total number of votes outstanding in Class B Membership; or

    2.  Seven (7) years from the date hereof.

**4.06  MANAGING AGENT:**  The term of any management agreement shall not exceed three years and shall be terminable for cause by the Association on thirty (30) days' written notice and without cause  or payment of a termination fee by either party on sixty (60) days' written notice.

**4.07  DIRECTOR AND OFFICER LIABILITY:**  Neither the directors nor the officers of the Association whether elected or designated by the Declarant shall be personally liable to the Owners for any   mistake of judgment or for any other acts or omissions of any nature whatsoever as such directors and officers except for any acts or omissions found by a court to constitute criminal conduct, gross negligence or fraud.  The Association shall indemnify and hold harmless each of the directors and each of the officers, his heirs, executors or administrators, against all contractual and other liabilities to others arising out of contracts made by or other acts of the directors and officers on behalf of the Owners or  the Association or arising out of their status as directors or officers unless any such contract or act shall have been made criminally, fraudulently or with gross negligence.  It is intended  that the foregoing

Redacted

indemnification shall include indemnification against all costs and expenses (including, but not limited to, counsel fees, amounts of judgments paid and amounts paid in settlement) actually and reasonably incurred in connection with the defense of any claim, action, suit or proceeding, whether civil, administrative, or other, in which any such director or officer may be involved by virtue of such person being or having been such director or officer; provided, however, that such indemnity shall not be operative with respect to (i) any matter as to which such person shall have been finally adjudged in such action, suit or proceeding to be liable for criminal conduct, gross negligence or fraud in the performance of his duties as such director or officer, or (ii) any matter settled or compromised, unless, in the opinion of independent counsel selected by or in a manner determined by the Board, there is not reasonable ground for such person being adjudged liable for criminal conduct, gross negligence or fraud in the performance of his duties as such director or officer.

## ARTICLE V
## INSURANCE

5.01 LIABILITY INSURANCE: The Board shall also have the authority to and shall obtain comprehensive public liability insurance including liability for injuries to and death of persons and property damage in such limits as it shall deem desirable and Workmen's Compensation Insurance and other liability insurance as it may deem desirable, insuring each Owner, the Association, its offices, members of the Board, the Declarant, and their respective employees and agents, from liability in connection with the Common Areas and ingress and egress on thereof; and insuring the officers of the Association and members of the Board from liability for good faith actions beyond the scope of their claims of one or more insured parties against other insured parties. The premiums for such insurance shall be Common Expenses.

## ARTICLE VI
## ASSESSMENTS

6.01 CREATION OF LIEN AND PERSONAL OBLIGATION: Each Owner of a Lot or Unit, except the Declarant, by acceptance of a deed therefore, whether or not it shall be so expressed in any such deed or other conveyance, shall be and is deemed to covenant and hereby agrees to pay to the Association such assessments or other charges or payments as are levied pursuant to the provisions of this Declaration. Such assessments, or other charges or payments, together with interest thereon and costs of collection, if any, as herein provided shall be a charge on the Lot or Unit and shall be a continuing lien upon the Lot or Unit against which each such assessment is made. Each such assessment, or other charge or payment, together with such interests and costs, shall also be the personal obligation of the Owner of such Lot or Unit at the time when the assessment or other charge or payment becomes due.

6.02 PURPOSE OF ASSESSMENTS: The assessments levied by the Association shall be exclusively for the purposes of maintaining the Common Area providing buffering, entryway and subdivision identification, on a continuous basis, in accordance with the final engineering plans for the Property and the ordinances of the Village of Sugar Grove relating thereto as amended from time to time, to administer the affairs of the Association, and to pay the

Common Expenses.

Redacted

6.03 ANNUAL ASSESSMENT: Each year the Board shall furnish each Owner with a proposed budget for the ensuing calendar year which shall show the following, with reasonable explanations and itemizations:

(a) The estimated Common Expenses;

(b) The estimated amount, if any, to maintain adequate reserves for Common Expenses;

(c) The estimated net available cash receipts from sources other than assessments, including, without limitation, receipts from any leases, licenses or concessions;

(d) The amount of the "Annual Assessment", which is hereby defined as the amount determined in (a) above, plus the amount determined in (b) above, minus the amount determined in (c) above, minus excess funds, if any, from the current year's operation.

6.04 PAYMENT OF ANNUAL ASSESSMENT AND CAPITAL CONTRIBUTION:

A. For Windsor West Unit 1

(1) On or before the 1st day of February of the calendar year for which the annual assessment is assessed, each Owner of a Lot, except the Declarant, shall pay to the Association that portion of the annual assessment which is payable by such Owner.

(2) The initial assessment for all the Lots shall begin the first day of the month following the issuance of a certificate of occupancy on any Lot or Dwelling by the Village of Sugar Grove. All annual assessments shall be due in one installment for the year in which they are assessed unless otherwise designated by the Board.

(3) Declarant, its successors or assigns shall collect at the closing for each Lot the Capital Contribution as herein described together with the prorated annual assessment as described in (b) above.

B. For Windsor West Unit 2 (Villas).

(1) On or before the 1st day of February of the calendar year for which the annual assessment is assessed, the Windsor West Condominium Association shall pay to the Association that portion of the annual assessment which is payable by each Unit Owner except the Declarant.

(2) The initial assessment for all the units shall begin the first day of the month in which the initial conveyance occurs. All annual assessments shall be prorated and collected with the monthly maintenance of the Windsor West Condominium Association unless otherwise designated by the Board.

Redacted

    (3) Declarant, or its successors or assigns shall collect at the closing for each Unit the Capital Contribution as described 6.05.

6.05 CAPITAL CONTRIBUTION: Upon the closing of the sale of each Assessable Lot or Unit to a purchaser for value, the purchasing Owner shall make a non-refundable working Capital Contribution to the Association in the amount of $250.00 until December 31, 2004. From and after January 1, 2005 the amount of the Capital Contribution shall be determined by the affirmative vote of two-thirds (2/3) of the Board of Directors of the Association provided in this Declaration and the By-Laws of the Association which amount shall be held and used by the Association for its working capital needs.

6.06 SPECIAL ASSESSMENTS:

  (a) Special assessments may be levied by the Association to defray the expense, in whole or in part, of any capital improvement or unforeseen expenses. Such capital improvements shall include the construction, reconstruction or unexpected repair or replacement of any capital improvements on the Common Area; or other improvements required pursuant to this Declaration.

  (b) Whenever the Board of Directors shall determine there exists a need for levying a special assessment as herein provided, the Board of Directors shall adopt a resolution setting forth the needed amount, period of payment and due date or dates for the proposed special assessment. All special assessments must be approved by a majority vote of the Voting Members of the Association. Such vote shall be taken at a meeting called by the Board of Directors for that purpose.

  (c) Allocation of Assessments: Regular annual Capital Contributions and special assessments must be fixed at a uniform rate for all Lots and Units except as may otherwise be provided in this Declaration. Any assessment and any installment thereof provided for herein shall commence on the Lot or Unit on the due date for such assessment following the conveyance, or transfer for lease of such Lot or Unit by the Declarant.

6.07 CAPITAL RESERVE: The Association shall segregate and maintain special reserve accounts to be used solely for making capital expenditures in connection with the Common Areas (the "Capital Reserve"). The Board shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Common Areas and property owned by the Association as well as periodic projections of the cost of anticipated major repairs or improvements to the Common Areas or the purchase of property to be used by the Association in connection with its duties hereunder. The Capital Reserve may be built up by special assessment or out of the Annual Assessment as provided in the budget. Each budget shall disclose that portion of the Annual Assessment which shall be added to the Capital Reserve and shall also disclose (i) which portion thereof is for capital expenditures with respect to the Common Areas and (ii) which portion thereof is for capital expenditures with respect to property owned or to be owned by the Association. Special accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to the Common Areas shall

Redacted

be held by the Association as agent and trustee for the Owners. Special accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to property owned or to be owned by the Association shall be deemed to have been funded by Capital Contributions to the Association by the Owners.

## 6.08 NONPAYMENT OF ASSESSMENT:

(a) Any assessments, Regular, Annual, Special or Capital Contribution which are not paid on the due date shall be delinquent. Such delinquency shall be a continuing lien and an equitable charge running with the land touching and concerning said Lot or Unit so assessed, held by the then Owner or Owners, his heirs, devises, personal representatives, assigns, successors and grantees.

(b) Should title to any Lot or Unit be held by more than one Owner, all Owners shall be jointly and severally liable. The lien shall attach to all rents due from parties in possession on any Lot or Unit on which a delinquent assessment exists, provided that it shall be subordinate to a mortgage held by a mortgagee when delivered in connection with a first mortgage loan to purchase any Lot or Unit.

(c) Should any assessment remain unpaid thirty (30) days after it has become delinquent, such assessment shall bear interest at eighteen (18%) percent per annum.

(d) The Association may recover any delinquent assessments by bringing an action at law or in equity (including forcible entry and detainer) against the then Owner personally obligated to pay the same or foreclose the lien against the Lot or Unit. Such recovery shall include interest, costs and reasonable attorneys' fees incurred in connection with any such action.

(e) The enforcement of liens or charges shall be limited to a period of twenty-five (25) years.

(f) The venue for all actions at law provided for in this Article VI shall be in Kane County, Illinois. The persons in possession of any Lot or Unit shall be authorized to accept summons on behalf of the Owner or Owners of such Lot or Unit.

(g) No Owner may waive or otherwise escape liability for the assessments provided for herein by the non-use of the Lot.

6.09 SUBORDINATION OF LIEN: The lien on each Lot or Unit Ownership provided for in Section 6.01 for assessments or other charges or payments shall be subordinate to the lien of any first mortgage on the Lot or Unit Ownership recorded prior to the date that any such assessments or other charges or payments become due. Except as hereinafter provided, the lien provided for in Section 6.01 shall not be affected by any transfer of title to the Lot or Unit Ownership. Where title to the Lot or Unit Ownership is transferred pursuant to a decree of foreclosure or by deed or assignment in lieu of foreclosure, such transfer of title shall (to the extent permitted by law) extinguish the lien for any assessments or other charges or payments

Redacted

under Section 6.01 which became due prior to (i) the date of the transfer of title or (ii) the date on which the transferee comes into possession of the Dwelling Lot or Unit, whichever occurs first. However, the transferee of a Lot or Unit Ownership shall be liable for his share of any assessments or other charges or payments with respect to which a lien against his Lot or Unit Ownership has been extinguished pursuant to the preceding sentence which are reallocated among the Owners pursuant to a subsequently adopted annual, revised or special assessment, and nonpayment thereof shall result in a lien against the transferee's Lot or Unit Ownership as provided in Section 6.01. If for any reason the Owner of a Dwelling Lot or Unit is permitted to remain in possession of his Dwelling Lot or Unit during the pendency of a foreclosure action with respect to the Dwelling Lot or Unit, the Owner shall be required to pay a reasonable rental for such right and the plaintiff in the foreclosure action shall be entitled to the appointment of a receiver to collect such rental.

## ARTICLE VII
## USE RESTRICTIONS

**7.01  SINGLE FAMILY:**  All Lots and Units on the Property shall be used for single family residential purposes only; except that Declarant reserves the right to use Lots and Units and Dwellings for construction and sales offices, display or storage purposes.  No vehicle, outbuilding or other structure other than a Dwelling, as defined herein, shall be used as a residence, either temporarily or permanently, on any part of the Property.

**7.02  STORAGE ON THE PROPERTY:**  No boat, commercial vehicle, airplane, trailer, house trailer or motorized recreational vehicle shall be stored permanently or temporarily in the open on any of the Property, except that the operable conventional passenger vehicles of the Owner, their tenants and guests, shall be permitted to be parked on the Owner's respective driveway or driveway easement.

    a)    Accessory Buildings

        1)   Wooden storage shed may be allowed no larger than 100 square feet;

        2)   Accessory buildings shall be set back from the interior side lot line, according to the current Village ordinance.

        3)   Accessory buildings shall match the existing house and trim colors. (color, materials, etc.) Allowable roof lines of these sheds shall be hip and gable type to be fully shingled with matching color of residence.

**7.03  CONDITION OF PROPERTY:**  The Property shall be kept free and clear of all rubbish, debris and all other unsightly materials, and no waste shall be permitted thereon.  All rubbish, trash or garbage shall be kept indoors so as not to be seen from neighboring Lots or Units or streets and shall be regularly removed from the Property and shall not be allowed to accumulate thereon.

Redacted

**7.04  ADVERTISING AND SIGNS:**  No advertising signs, billboards, objects of unsightly appearance or nuisances shall be erected, placed or permitted to remain on the Property except:

(a)     Signs and billboards used by Declarant during the construction and sale of Lots and Units; and

(b)     Not more than one "For Sale" or "For Rent" sign of not more than three (3) square feet displayed by an Owner on his Lot or Unit.  This sign shall be subject to Board approval.

**7.05  NOXIOUS OR OFFENSIVE ACTIVITY:**  No noxious or offensive activity shall be conducted upon any of the Property, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood.  Without in any way limiting the effect of the foregoing, the following activities are specifically prohibited:

(a)     The burning of refuse (except as the burning of leaves may be permitted by ordinance of the appropriate municipal authority).

(b)     The maintenance of exterior television or radio antennas, satellite dishes, poles, wires, rods or other devices in connection with the reception or transmission of any television, radio or other electrical signal which are visible from the Street.  Satellite dishes which do not exceed 18" in diameter may be installed subject to Board approval provided they are sufficiently screened or camouflaged by landscaping or some other appropriate method.

**7.06  FENCES:**  The erection or maintenance of chain link fencing or chain link dog run shall be expressly prohibited.    Fences shall not exceed six (6) feet high except as provided below.

(a)     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(b)     Wood fences must only be of natural finish with sealer; no painted fences will be allowed.  Fence style is limited to 1" x 4" shadow box construction with dog-ear finish.  No other wood fences are allowed.

**7.07  RULES AND REGULATIONS:**  The Board may adopt such other rules and regulations from time to time governing the use and enjoyment of the Property, Common Area and Common Facilities as the Board of Directors of the Association in its sole discretion deems appropriate or necessary.

**7.08  DRIVEWAYS AND PARKING AREAS:**  After the initial installation by Declarant, its successor or its agent, driveways or parking areas may not be extended or built beyond the sideyard building setback line without the written authorization of the Community Association and the adjacent property owner and in addition is subject to the then governing municipal ordinances pertaining thereto.

## ARTICLE VIII
## MODIFICATIONS OR TERMINATION

Redacted·

**8.01 MODIFICATION:** From and after the Turnover Date this Declaration may be modified by an instrument in writing setting forth such modification, signed by the Owners having at least two-thirds (2/3rds) of the total vote, and certified by the Secretary of the Board; provided, however, that all lien holders of record have first been given ten (10) days' written notification by certified mail of such modification, and an affidavit by said Secretary certifying to such mailing is a part of such instrument. This Declaration may not be modified, however, to delete the obligation of the Association to maintain the Common Area without the express written approval of the Village of Sugar Grove.

**8.02 RECORDATION:** Any modification shall not be effective until such instrument is duly recorded in the Office of the Recorder of Kane County; provided, however, that no provision in this Declaration may be modified in such manner or so as to conflict with any State statute.

**8.03 MODIFICATION BY DECLARANT:** Declarant shall have the right to amend, modify or delete any Section or portion thereof of this Declaration at any time prior to the conveyance of the last Lot or Unit within the Property. At the time of such amendment, modification or deletion Declarant shall file such document in the Office of the Recorder of Kane County and send notice of said Amendment to the Department of Development for the Village of Sugar Grove and to all Owners of the Lots within the Property. Thereafter, said amendment, modification or deletion shall be in full force and effect and binding on the Property.

**8.04 TERMINATION:** This Declaration shall terminate and be of no further force or effect if the Common Area is conveyed to a municipal corporation including, but not limited to, Village of Sugar Grove or Village of Sugar Grove Park District, any other Owners' Association located on the Property, the acceptance of maintenance by the Owners of the balance of the Property or other special district exercising jurisdiction. No transfer of the Common Area shall occur without the approval of the Village of Sugar Grove. Said transfer shall become effective upon recordation of a Deed and/or a Bill of Sale in the Office of the Recorder of Kane County, Illinois.

## ARTICLE IX
## VILLAGE OF SUGAR GROVE

**9.01 VILLAGE OF SUGAR GROVE:** Until termination as called for in Article VIII of this Declaration, the following covenants and provisions are intended to inure to the benefit of the Village of Sugar Grove, an Illinois Municipal Corporation (hereinafter "Village"), its successors and assigns, and it is specified and provided as follows:

(a) The Village is granted a perpetual easement right and privilege but shall have no obligation to enter upon the Common Area for the purpose of performing any of the maintenance duties or other obligations of the Association relating to the Common Area

Redacted

including anything resulting in either the continuation or creation of a nuisance or in the enforcement to comply with any ordinance, statute, law or this Declaration.

(b) Upon the failure of the Association to perform any of its maintenance duties or other obligations relating to the Common Area resulting in either the continuation of or creation of a nuisance, or in the event of any violation of any ordinance, statute, law or this Declaration, upon written notice to the duly authorized agent of the Association or to any officer or director thereof, and the continued failure of the Association to perform such duties or obligations, or to comply with such ordinance, statute or law, within ten (10) days after the mailing of such notice, the Village shall have the right, but not the obligation, to enter upon the Common Area to correct or eliminate such nuisance or nuisances or the violation of such ordinance, statute or other law, provided, however, that no notice shall be required in case of the existence of an emergency determined in good faith by any Village official. The cost of such work, and all expenses incurred by the Village in connection with any proceedings to enforce its rights hereunder, including court costs and attorneys' fees, together with interest thereon at 10% per annum, shall be a lien upon the Common Area as well as a lien against the Lot of each Owner upon perfection of such lien by recording with the Recorder of Kane County, and shall be assessed against each Owner and each Member of the Association, and the Village shall also have the right to file suit against such Owners and Members, or any of them, in any court of competent jurisdiction to enforce its rights hereunder. Any such lien shall be subordinate to the lien of any first mortgage on any Lot, but the enforcement of such lien shall not be cause for acceleration of the debt secured by, or foreclosure of, any such first mortgage.

(c) The public at large shall have a perpetual right to enter and use the common areas for all lawful purposes, in accordance with the Village of Sugar Grove ordinances concerning parks.

(d) In the event that the Village of Sugar Grove requests title to any or all of the Common Areas outlined in Exhibit B, the Association shall transfer title to the Village at no cost within thirty (30) days of any said request. This section cannot be deleted or amended without the approval by resolution of the Sugar Grove Village Board.

## ARTICLE X
## GENERAL PROVISIONS

**10.01 SEVERABILITY:** If any provision of the Declaration or By-Laws or any section, sentence, clause, phrase or word, or the application thereof in any circumstances, is held invalid, the validity of the remainder of the Declaration and By-Laws and of the application of any such provision, section, sentence, clause, phrase or word in any other circumstances shall not be affected thereby.

**10.02 EXISTENCE OF DECLARATIONS:** Each of the options, privileges, covenants or rights created by this Declaration, or otherwise, shall continue for the initial period of thirty (30) years from the date of the first recordation in the Office of the Recorder of Kane County and thereafter for successive periods of twenty-five (25) years each.

Redacted

**10.03 RIGHTS AND OBLIGATIONS:** Each grantee of Declarant by the acceptance of a deed of conveyance, and each purchaser under any contract for such deed of conveyance, accepts the same subject to all restrictions, conditions, covenants, reservations, liens and charges, and the jurisdiction, rights and powers created or reserved by this Declaration, and all rights, benefits and privileges of every character hereby granted, created, reserved or declared, and all impositions and obligations hereby imposed shall be deemed and taken to be covenants running with the land, and shall bind any person having at any time any interest or estate in said land, and shall inure to the benefit of such person in like manner as though the provisions of this Declaration were recited and stipulated at length in each and every deed of conveyance. Reference in the respective deeds of conveyance, or in any mortgage or trust deed or other evidence of obligation, to the rights described in this paragraph or described in any other part of this Declaration or the By-Laws shall be sufficient to create and reserve such easements and rights to the respective grantees, mortgagees and trustees of such Lot or Unit Ownership as fully and completely as though such rights were recited fully and set forth in their entirety in such documents.

**10.04 LIBERAL CONSTRUCTION:** The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for development.

**10.05 LOT OR UNIT OWNERSHIP IN TRUST:** In the event title to any Lot or Unit Ownership is conveyed to a title holding trust, under the terms of which all powers of management, operation and control of the Lot or Unit remain vested in the trust beneficiary or beneficiaries, then the beneficiaries thereunder from time to time shall be responsible for payment of all obligations, liens or indebtedness and for the performance of all agreements, covenants and undertakings chargeable or created under this Declaration against such Lot or Unit. No claim shall be made against any such title holding trustee personally for payment of any lien or obligation hereunder created and the trustee shall not be obligated to sequester funds or trust property to apply, in whole or in part, against such lien or obligation. The amount of such lien or obligation shall continue to be a charge or lien upon the Lot or Unit Ownership and the beneficiaries of such trust notwithstanding any transfers of the beneficial interest of any such trust or any transfers of title to such Lot or Unit Ownership.

**10.06 POWER AND AUTHORITY OF DECLARANT:** Until such time as the last Lot or Unit in the Association is conveyed by Declarant or upon transfer to the Association of the rights set forth in Article IV of this Declaration, the Declarant shall exercise any and all of the powers, rights, duties and functions of the Board.

**10.07 COVENANT IN EVENT OF DISSOLUTION OF ASSOCIATION:** All Owners hereby covenant and agree that in the event the Association herein provided for shall be dissolved, all obligations for the maintenance of the Common Area shall remain in full force and effect until terminated pursuant to Article VIII and shall devolve upon and be the joint and several obligation of the Owners.

**10.08 SIGNIFICANT LITIGATION:** No judicial or administrative proceedings shall be commenced or prosecuted by or in the name of the Association without first holding a special meeting of the Members and obtaining the affirmative vote of Voting Members representing at

Redacted

least seventy-five percent (75%) of the Voting Members to the commencement and prosecution of the proposed action. This Section shall not apply to (a) actions brought by the Association to enforce the provisions of this Declaration, the By-Laws or rules and regulations adopted by the Board (including, without limitation, an action to recover Assessments or to foreclose a lien for unpaid Assessments) or (b) counterclaims brought by the Association in proceedings instituted against it.

10.09   CAPTIONS:   All articles and section headings set forth herein are intended for convenience only and shall not be given or construed to have any substantive effect on the provisions of this Declaration.

10.10   REMEDIES AND BREACH OF COVENANTS, RESTRICTIONS AND REGULATIONS:

(a)   Default:   In the event of any default of any Owner under the provisions of this Declaration, By-Laws or rules and regulations of the Board or any amendment thereof, the Board shall have each and all of the rights which may be provided for in this Declaration, By-Laws or rules and regulations, or which may be available at law or in equity and may prosecute any action or other proceeding for enforcement of any lien or for damages or injunction or specific performance, or for judgment for payment of money and collection thereof, or for any combination of remedies or for any other relief. All expenses of the Board in connection with such actions or proceedings, including court costs and attorneys' fees and other fees expenses, shall be charged to and assessed against such defaulting Owner.

(b)   No Waiver of Rights:   The failure to enforce any right, provision, covenant or condition which may be granted by this Declaration, By-Laws or the rules and regulations of the Board shall not constitute a waiver of the right or of continuing right to enforce such a right, provision, covenant or condition in the future, irrespective of the number of violations, defaults or breaches which may occur.

(c)   Remedies Cumulative:   All rights, remedies and privileges granted to the Association pursuant to any terms, provisions, covenants or conditions of this Declaration, By-Laws or rules and regulations of the Board of the Association, shall be deemed to be cumulative, and the exercise of any one or more shall not be deemed to constitute an election of remedies nor shall it preclude the Association thus exercising the same from exercising such other and additional rights, remedies or privileges as may be granted to the Association at law or in equity.

10.11 LIST OF ADDRESSES OF OWNERS: Each Owner of a Lot or Unit in the Windsor West Subdivision shall file the correct mailing address of such Owner with Declarant, or its agents, successors or assigns, and shall notify Declarant, or its agents, successors or assigns, promptly in writing of any subsequent change of address. Declarant, or its agent, successors or assigns, shall maintain a file of such addresses. A written or printed notice, deposited in the United States Post Office, postage prepaid, and addressed to any Owner of any last address filed by such Owner with Declarant, or its successors or assigns, shall be sufficient and proper notice to such Owner whenever notices are required in this Declaration.

Redacted

**10.12 ASSIGNMENT BY DECLARANT:** At any time or times, Declarant may assign any or all of its rights conferred on it as set forth in this Declaration and upon its execution of any assignment by Declarant, it shall be relieved from any liability arising from the performance or non-performance of such rights or obligations.

**10.13 DECLARANT'S RESERVED RIGHTS:** Notwithstanding anything herein to the contrary, the Property described in Exhibits A and B shall be subject to:

(a) The right of the Declarant to execute all documents and do all other acts and things affecting the Property which, in the Declarant's opinion, are desirable in connection with Declarant's rights hereunder, provided any such document or act or thing is not inconsistent with the property rights of any Owner or of the Association.

(b) Easements of record on the date hereof, the easement hereby granted to the Village of Sugar Grove in Article IX, and any easements which may hereafter be granted by Declarant to any public utility or governmental bodies for the installation and maintenance of electrical and telephone conduit and lines, gas pipes, sewer and water pipes, cable TV or any other utility services serving any Lots or Units or Common Area.

**10.14 VARIATIONS:** Declarant, or its successors or assigns, shall have the right to enter into agreements with the Owners of any Lot or Lots, Unit or Units, (without the consent of Owners of other Lots or Units or adjoining or adjacent property) to vary any and all of the above covenants set forth in this Agreement, provided that, in the sole discretion of Declarant, there are practical difficulties or particular hardships evidenced by the petitioning Owner, and any such deviations (which shall be manifested by an agreement in writing) shall not constitute a waiver of the particular covenant involved or any other covenant as to the remaining Property.

Redacted

IN WITNESS WHEREOF, WISEMAN-HUGHES ENTERPRISES, INC., an Illinois corporation, as owner of record of all of the Lots in Exhibit A and owner of record of Exhibit B, and as Declarant, has caused this instrument to be executed by its President, attested by its Secretary, and its corporate seal to be hereto affixed, on the day and year first above written.



WISEMAN-HUGHES ENTERPRISES, INC.,
an Illinois corporation

By: _____
President

ATTEST:

_____
Secretary

STATE OF ILLINOIS )
) SS.
COUNTY OF DU PAGE )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that James P. Hughes, personally known to me to be the President of WISEMAN-HUGHES ENTERPRISES, INC., an Illinois corporation, and John Kulczewski, personally known to me to be the Secretary of said Corporation, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as such President and Secretary, they signed and delivered the said instrument as President and Secretary of said Corporation, and caused the corporate seal of said corporation to be affixed thereto, pursuant to authority given by the Board of Directors of said Corporation as their free and voluntary act, and as the free and voluntary act and deed of said Corporation, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal, this __9th__ day of __February__ 2004.

_____
Notary Public

My Commission Expires:

__5.8.06__

"OFFICIAL SEAL"
Dyani Dohlen
Notary Public, State of Illinois
My Commission Expires 5/08/06